UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.                                                              Case No. RDB-19-020

PAUL ALEXANDER

    **Defendant**
_____/

## DEFENDANT'S MOTION TO SUPPRESS

NOW COMES, Paul Alexander, Defendant, by and through his attorney, Russell Neverdon, Sr., of the Law Office of Russell A. Neverdon, Sr., pursuant to Fed. R. Crim. P. 12(b)(3)(C), and files this Motion to Suppress the car stop and subsequent Search and Seizure, and, in support thereof, states as follows:

### Background[1]

On May 15, 2018, between the hours of 4:40pm and 6:00pm, at the intersection of Woodlawn Drive and Security Boulevard, Baltimore County police officers effected a traffic stop on a white BMW, Maryland License plate #89531CG. The vehicle was occupied by Mr. Paul Alexander and Rodney Jones. Police officers informed Defendant that he was being pulled over because of tint on the car windows, and that they could tell that his tint was illegal by comparing it to other windows on the car; no other reason was given as cause for the stop.[2] Almost immediately upon coming upon the vehicle, police ordered Defendant and Mr. Jones, out of the vehicle, and had them sit on the curb.

---

[1] The information in this section is provided by the recollection of Defendant. The government has yet to provide records relevant to the incident search.
[2] No traffic citation was written for this incident, nor was a repair order provided to Mr. Alexander to have the tint corrected.

Police did not allege that Defendant, nor Mr. Jones, was acting suspiciously, or making any furtive movements prior to having them exit the vehicle. Nor did they allege that they witnessed any illegal activity, nor was the smell of marijuana given as cause to conduct a search of the vehicle. After being detained for more than 30 minutes,[3] a K-9 unit arrived on the scene, consisting of Officer Huter and K-9 Gejza.[4] Officer Huter deployed Gejza and police allege that Gejza alerted to the presence of narcotics on the passenger side and truck of the vehicle. Police then conducted a search of the vehicle and discovered U.S. currency totaling more than $420,000 dollars, which was seized.

Police also seized a cable bill for Latina Skipwich at 7789 Arundel Mills Blvd, apt. 47, and a Cartier jewelry bill for Cierra Glover at 12401 Brickyard Blvd, Beltsville, MD, in the amount of $42,506 dollars. The evidence recovered during the stop, the search of the vehicle, and any evidence subsequently seized as a result thereof, are the fruits of this motion.

## Argument

The Fourth Amendment provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.  Probable cause has been defined as:

> Reasonable grounds for belief of guilt, supported by less than prima facie proof but more than mere suspicion.

*United States v. One Parcel*, 906 F.2d 110, 112 (4th Cir. 1990).

---

[3] At no time during the detention did police conduct a check on the registration and insurance of the vehicle, nor on the license statuses of Defendant and Mr. Jones.

[4] Defendant did not give consent to search the car, nor did police ever ask for his consent, nor the consent of Mr. Jones.

Subject to a few carefully delineated exceptions, warrantless searches are presumptively unreasonable. *Katz v. United States*, 389 U.S. 347, 357 (1967).  The Court of Special Appeals has explained,

> When the State's investigation, for whatever reason, follows the disfavored warrantless route, on the other hand, the procedural ball ends up in the State's court. The State assumes the burden of overcoming the presumption of invalidity by demonstrating, by however many steps are necessary, that the warrantless search satisfied one of the firmly established exceptions to the warrant requirement.

*Epps v. State*, 193 Md. App. 687, 704 (2010), *reconsideration denied* (Sept. 14, 2010).  The Supreme Court has made clear, that

> A traffic stop involving a motorist is a detention which implicates the Fourth Amendment. *See United States v. Sharpe*, 470 U.S. 675, 682 (1985); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (analogizing the degree of intrusiveness of the usual traffic stop to the degree of restraint imposed by the typical *Terry* stop). It is equally clear, however, that ordinarily such a stop does not initially violate the federal Constitution if the police have probable cause to believe that the driver has committed a traffic violation. *Whren v. United States*, 517 U.S. 806, 81 (1996). Nonetheless, the Supreme Court has also made it clear that the detention of a person "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion).
>
> Thus, once the purpose of [the traffic] stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention. *See Royer*, 460 U.S. at 500, Thus, once the underlying basis for the initial traffic stop has concluded, a police-driver encounter which implicates the Fourth Amendment is constitutionally permissible only if either (1) the driver consents to the continuing intrusion or (2) the officer has, at a minimum, a reasonable articulable suspicion that criminal activity is afoot.

**A. The Police illegally stopped and searched the vehicle**.

The Maryland Court of Appeals holds that "a traffic stop is valid under the Fourth Amendment if the officer has probable cause to believe that the driver has committed a traffic violation or if the officer has a reasonable, articulable suspicion that either criminal or motor vehicle laws are being violated." *McCain v. State*, 194 Md. App. 252 (2010).  In this case, the government

bears the burden to demonstrate that the stop of Defendant's vehicle was legal.

Police allege that the stop of Mr. Alexander's vehicle was justified because the vehicle contained tinted windows that were illegal. The police were wrong in two respects. First, the tint on the windows were not unlawful, and (2) police did not have an objective basis by which to determine whether the tint was unlawful at first glance. *See Santos v. State*, 230 Md. App. 487, 495 (2016) ("In assessing the traffic stop, the only concern is whether the officer possessed sufficient information to objectively justify the stop; the officer's subjective intent is irrelevant").

The factory tint that was installed on the subject 2017 BMW was well within the limits set by Maryland law, including light transmittance through the windows of at least 35%, and of which was clearly marked on the windows. *See* Transp. Art. 22-406(i), as supplemented by COMAR 11.14.02.14. Police officers had no objective basis to determine that a traffic stop was justified simply because the level of tint on one window was different from another. This line of subjective reasoning was recently rejected in *State v. Williams*, 401 Md. 676 (2007), where the Court held that a police officer's subjective belief that the tint of the defendant's car was illegal by comparing it to other windows on the vehicle, did not provide reasonable articulable suspicion to justify a warrantless stop. *Id.* at 691. In so holding, the Court explained that a tinting violation "based solely on an officer's visual observation" has to be in the context of what a "properly tinted window, compliant with the 35% requirement, would look like." *Id.* at 692.

Without reasonable articulable suspicion that criminal activity was afoot, or that a traffic violation was being committed, police had no reason to stop, detain, and seize monies and other items from Defendant.

    **B. When the Officer received the occupant's identification after pulling the car over, and did not issue a traffic citation, the initial traffic stop ended.**

Mr. Alexander's initial traffic stop ended after police decided not to check the status of the vehicle registration, insurance, and warrant status of defendant. When Mr. Alexander and his

4

passengers were asked to step out of the vehicle, an illegal second stop began. Officers were on a fishing expedition which yielded U.S. currency and other items that federal authorities used in obtaining search warrants and surveillance of Defendant. The Maryland Court of Appeals held that "[o]nce the purpose of a traffic stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention. *Ferris v. State*, 355 Md. 356, 372 (1999). The court continued, holding:

> Thus, once the underlying basis for the initial traffic stop has concluded, police-driver encounter which implicates the Fourth Amendment is constitutionally permissible only if either (1) the driver consents to the continuing intrusion or (2) the officer has, at a minimum, a reasonable, articulable suspicion that criminal activity is afoot.

*Id.* at 372. In this case, Officers stopped Defendant's vehicle for allegedly having illegal tint on the windows. Once officers received Defendant's credentials and determined that the vehicle was properly registered and had insurance, the officer was required to issue a citation or warning, and the initial traffic stop thus ended. Instead of allowing Defendant to leave, officers made him exist the vehicle, and forced him to wait until a K-9 unit arrived to conduct a search of the vehicle.

The Supreme Court recently held that absent reasonable articulable suspicion of criminal activity, a detaining officer may not extend an otherwise-completed traffic stop in order to conduct a dog sniff. *Rodriguez v. United States*, 135 S. Ct. 1609, 1614-16 (2015). As the Court explained, the "[a]uthority for seizure ... ends when tasks tied to the traffic infraction are – or reasonably should have been – completed." *Id.* at 1614. Thus, in order to extend the stop beyond a completed traffic infraction, the detaining officer must either "'articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity than may appear at first glance.'" *United States v. Williams*, 808 F.3d 238, 246 (4th Cir. 2015) (citation omitted).

5

None of what is required to extend a traffic stop beyond its completion is shown in this case. The police did not say that Mr. Alexander, or Mr. Jones, was acting in any way suspicious. There is no suggestion by police that either one of them appeared nervous, *see United States v. Pittman*, 102 Fed. Appx. 315, 319 (4th Cir. 2004) (nervousness is one factor that may be considered in determining whether police had reasonable suspicion that criminal activity was afoot), or that Defendant accomplished any furtive movements, *United States v. Smith*, 594 F.3d 530, 540 (6th Cir. 2003) ("Furtive movements made in response to a police presence may also properly contribute to an officer's suspicion").

On this record, the Court must conclude, consistent with *Williams*, supra, that "[e]xtending the otherwise-completed stop" of the BMW to "conduct a dog sniff thus contravened the Fourth Amendment." 808 F.3d at 253.

### C. Without Probable Cause to Search the Defendant's vehicle, the Officers violated his Fourth Amendment Rights and all Evidence must be Suppressed as Fruits of the Poisonous Tree.

After being stopped for a traffic violation on May 15, 2018, Mr. Alexander's vehicle was illegally searched, and some of the evidence seized during the search, i.e., a cable bill for Latina Skipwich at 7789 Arundel Mills Blvd, apt. 47, and a Cartier jewelry bill for Cierra Glover at 12401 Brickyard Blvd, Beltsville, MD, in the amount of $42,506 dollars, among other things. These items allowed federal authorities to further investigate Mr. Alexander's whereabouts, and soon learned of other evidence that is now being used in the prosecution of this case; namely, illicit narcotics, U.S. currency, cell phone numbers, and other co-conspirators.

To admit any evidence seized through the search would be to entirely disregard the concept of the fruit of the poisonous tree.  Under the fruit of the poisonous tree doctrine, the exclusionary

rule bars the admission of physical evidence ... obtained directly or indirectly through the exploitation of police illegality. *See Wong Sun v. United States*, 371 U.S. 471, (1963); *United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007). The evidence found after the Defendant was illegally stopped and searched should be suppressed under the fruit of the poisonous tree doctrine.

Considering the totality of the circumstances, the facts of this case make it evidently clear that the officers did not have reasonable suspicion to stop Mr. Alexander at all. Further, even if officers were correct that Mr. Alexander had committed a traffic infraction because his car windows were illegally tinted, the police illegally extended the completed traffic stop beyond its intended purpose without reasonable articulable suspicion that criminal activity was afoot.

The stop and search were thus a violation of Mr. Alexander's Fourth Amendment rights and, accordingly, any evidence which stems from that seizure and subsequent search must be suppressed under the "fruit of the poisonous tree" doctrine.

## CONCLUSION

For the reasons set forth above, the Defendant, Paul Alexander, respectfully requests that his Motion to Suppress be granted and that all of the evidence seized by the police in this case, as well as any evidence obtained indirectly through the exploitation of police illegality, be suppressed. Additionally, the Defendant respectfully requests that he be granted the opportunity to supplement this motion with any additional facts or evidence that may be discovered at a later date.

Respectfully Submitted,

_____/s/_____
Russell A. Neverdon, Sr., Esquire
Federal I.D. No. 25949
711 Saint Paul Street
Baltimore, Maryland 21202
(410) 235-2184 Phone
(410) 235-4000 Facsimile

**Attorney for the Defendant**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of June, 2019, a copy of the foregoing Omnibus Pre-Trial Defense Motion to Suppress was mailed to: Office of the U.S. Attorney, 36 S. Charles Street, Baltimore, MD 21201.

_____/s/_____
Russell A. Neverdon, Sr., Esquire